UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

City of Chicago
    Plaintiff,

v.

United States Department of
Treasury, Bureau of Alcohol,
Tobacco and Firearms,

    Defendant.

00 C 3417

Judge George W. Lindberg

**MEMORANDUM OPINION AND ORDER**

Plaintiff City of Chicago initiated this action against Defendant United States Department of Treasury, Bureau of Alcohol, Tobacco and Firearms pursuant to the Freedom of Information Act, 5 U.S.C. §552. The parties' cross motions for summary judgment as to Count I are before the Court. For the reasons articulated below, the Court grants summary judgment for Plaintiff and against Defendant.

**I. BACKGROUND**

On November 12, 1998, the City of Chicago (the City) filed a civil action against certain manufacturers, distributors and dealers of firearms in the Circuit Court of Cook County, Illinois.[1] In that suit the City alleges that the defendant gun

---

[1] That case is styled <u>City of Chicago, et al. v. Beretta U.S.A. Corp. et al.</u>, 98 CH 15596.

manufacturers have created and maintained a public nuisance in the City of Chicago by intentionally marketing firearms to Chicago residents, and others likely to use or possess the weapons in Chicago, where essentially all firearms except long-barrel rifles and shotguns are illegal to possess. The City alleges that the gun manufacturers' conduct undermines the City's ability to enforce its gun control ordinances. The City's theory of liability in this lawsuit rests in part on the distribution practices of those gun manufacturers.

In an effort to gain information regarding nationwide firearm distribution patterns, the City turned to the United States Department of the Treasury, Bureau of Alcohol, Tobacco, and Firearms, (ATF). ATF compiles national data regarding firearms and maintains those records in a database format. The City sought information from two of AFT's databases, the "Trace Database"[2] and the "Multiple Sales Database." Data in the Trace Database is complied when a law enforcement agency, such as the Chicago Police Department, contacts ATF and requests that a trace be conducted on a weapon which the law enforcement agency recovered in connection to a crime. In most circumstances, ATF uses the serial number on the gun to determine the gun's

---

[2] The City refers to this Database as the "Crime Gun Trace Database" and ATF refers to it as the "Trace Database Sub-Module". In the interest of simplicity the Court will refer to this database as the Trace Database.

2

manufacturer. ATF then contacts that manufacturer to determine to which distributor or dealer the weapon was sold. Generally, the tracing continues down the purchasing line until ATF discovers the name of the individual consumer who bought the gun. ATF then relays this information back to the initiating law enforcement agency, and inputs the data into the Trace Database. Data for the Multiple Sales Database is submitted to ATF by dealers. When an individual purchases more than one gun from the same dealer within a five day period, the dealer must provide ATF a "multiple purchase form." The information which ATF gathers regarding multiple sales is then inputted into the Multiple Sales Database.

In late 1998, the City submitted a Freedom of Information Act (FOIA) request to ATF, seeking information contained in both the Trace and Multiple Sales Databases. ATF denied the request, but promised to provide the requested information if the City formally withdrew its FOIA request and instead requested the information pursuant to the 1968 Gun Control Act. The City complied. However, ATF failed to provide the City with the promised information. The City communicated its information request to ATF on at least two subsequent occasions, and eventually, on March 3, 2000, again filed a formal FOIA request.

On March 8, 2000, ATF sent the City a "zip" disk containing information from its Trace and Multiple Sales Databases. The zip disk was not specifically complied in response to the City's FOIA

request, but rather the disk contained information which ATF had complied beginning in 1998, as a uniform response to all FOIA requests. It is ATF's policy to respond to all FOIA requests with the zip disk, without consideration as to the specifics of a particular request. Accompanying the zip disk was a letter from Special Agent Kathleen Kiernan, of ATF, informing the City that the zip disk was being provided pursuant to the 1968 Gun Control Act. Not surprisingly, the disk did not contain much of the specific information which the City sought in its March 3, 2000 FOIA request. Thus, having exhausted its administrative remedies with ATF, the City initiated this action June 7, 2000.

## II. DISCUSSION

The Freedom of Information Act was enacted to, "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). The unambiguous public policy preference embodied by FOIA is that government operations ought not to be shrouded in secrecy, thus obscuring both culpability and credibility. Moreover, exemptions to FOIA are to be narrowly construed, to further the policy of broad disclosure. In re Wade, 969 F.2d 214 (7th Cir. 1992). Thus, FOIA proscribes that except in certain specifically defined instances, government

records will be disclosed. Where the government wishes to withhold properly requested records, the burden rests squarely with the government to demonstrate that the withheld information falls within one of FOIA's exemptions. <u>Solar Sources, Inc. v. United States</u>, 142 F.3d 1033 (7th Cir. 1998). In the instant case, ATF contends that all of the information it has withheld from the City falls within Exemption(6), Exemption(7)(A), or Exemption(7)(C), each of which are discussed below.

## A. EXEMPTIONS (6) and (7)(C)

As an initial matter, the Court finds that none of the information requested falls within FOIA Exemption(6). Section 552(6) provides an exemption for, "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." The City of Chicago is not requesting personnel or medical files from ATF, nor is it seeking any analogous information regarding any particular individual. For example, as a category of information, the City requests the address where a traced gun was recovered. ATF claims this information falls within Exemption(6), essentially arguing that the location of a recovered gun is information which would typically be found in an individual's personnel or medical file. The Court disagrees. The location of a recovered weapon does not

5

implicate a particular individual's privacy interest.[3] Perhaps more on point, ATF argues that categories of information which the City requests regarding the name and address of the purchasers and possessors of traced weapons, and multiple sale purchasers falls within Exemption(6). Again, the Court finds that an individual's name and address, where that individual is neither an employee or agent of the government agency, does not constitute information which is analogous to the type of sensitive information generally kept in a personnel or medical file, as would be protected by Exemption(6).

However, even if this information fell within the category of information protected by Exemption(6), the Court concludes that disclosure here would not constitute an "unwarranted invasion of personal privacy." Here, the privacy concern is implicated not by the publication of an individual's name and address, in which he clearly has a privacy interest, but rather by his identification in connection to a traced gun or the multiple purchases of guns. However, an individual's privacy interest in the secrecy of his gun purchase is very small. See, Center to Prevent Handgun Violence v. U.S. Dept. of Treasury, 981

---

[3] Furthermore, even if a particular privacy interest were at stake, the dual public policy interests of facilitating the analysis of national patterns of gun trafficking, and enabling the City of Chicago to enforce its criminal ordinances, far outweighs any potential privacy interest which an individual has in avoiding being identified in connection with the recovery of a crime-related weapon.

F.Supp. 20, at 23 (DDC, 1997). In contrast, the City of Chicago's interest in maintaining the integrity of its ordinances, as well as its interest in controlling gun trafficking into Chicago is very great. More compelling still is the general public interest in facilitating the analysis of gun trafficking patterns nationwide. Thus, whatever small privacy interest an individual may have in protecting his identity in connection with the purchase or possession of a weapon is greatly outweighed by the public interest in the disclosure of this information.

Further, ATF claims Exception under (7)(C) for all of the records for which it seeks exemption under (6). Section 552(7)(C) provides an exemption for law enforcement records where the disclosure of those records, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." However, the Court balances these privacy concerns against public policy interests and similarly finds that the privacy interests of the individuals concerned are outweighed by the public policy interest in disclosure as discussed above.

### B. EXEMPTION (7)(A)

The heart of ATF's claim to withhold information is Exemption(7)(A). Section 552(7)(A) provides an exemption for information "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or

7

information...could reasonably be expected to interfere with enforcement proceedings." ATF claims this exemption for every item it withheld, which totaled 45 categories of information in its Trace Database and 33 categories of information in its Multiple Sales Database. In support of its assertion that the release of the data contained in these 78 categories of information could reasonably be expected to interfere with law enforcement proceedings, ATF offers the Declarations and testimony of Dorothy Chambers, Chief of the Disclosure Division at ATF, and David Benton, Assistant Director of Field Operations at ATF. The mainstay of both Chamber's and Benton's testimony is the contention that the disputed fields of information, when pieced together with other disclosed pieces of information, could potentially allow an individual to deduce that a particular investigation was underway.

However, although the same information is before ATF in full, ATF itself does not know when a particular investigation is underway. ATF does not track the status of investigations surrounding the weapons which it traces. ATF states that when a law enforcement agency requests a trace from ATF, the agency does not notify ATF whether an investigation is underway, nor does the agency later notify ATF that an investigation has been concluded. Thus, ATF explains that it does not know when or whether an investigation is underway, absent notification from the law

enforcement agency. That notwithstanding, ATF contends that criminally-minded individuals armed with the same information which ATF has, could determine when and whether an investigation was ongoing, without the law enforcement agency's notification.

Further, because ATF does not know when or whether an investigation is ongoing, ATF developed a policy of releasing information on a one year, and five year basis. ATF releases some information after one year, assuming that any investigation related to that information would be closed after a year. For other categories of information, ATF assumes investigations will be closed after five years. However, in both instances ATF is releasing the information based on blanket assumptions regarding potential investigations. Despite this imprecise system, and the magnitude of information at issue, ATF is not aware of a single instance in which an actual investigation was compromised as a result of the piecing together of information scenario which Chambers and Benton describe.

Moreover, Chambers and Benton testify that if the information which the City seeks were released, an individual could discover that a particular weapon had been traced, the name of the individual who purchased and possessed the weapon, and the enforcement agency which sought the trace. However, neither witness adequately explains specifically how that information would allow an individual to interfere with an enforcement

proceeding. At most, the witnesses offer speculative views as to how an individual might deduce that a particular situation was being investigated, but neither witness is able to tie these speculations to a concrete picture of how that information would allow an outsider to interfere with the investigation. Nor could either witness rule out the likelihood that a determined individual could make the same deductions regarding potential investigations absent the FOIA disclosure, particularly in light of the process by which ATF conducts its traces.

To overcome the presumption of disclosure, ATF must present more than the double hypothetical possibility that an enforcement proceeding may be underway, and that releasing the requested information may interfere with that enforcement proceeding. See, e.g., Campbell v. HHS, 682 F.2d 256 (7th Cir. 1982). Under that standard, any information gathered for law enforcement purposes could be withheld from disclosure under FOIA. Such a result would be clearly contrary to Congress's intent in fashioning Exception (7)(A). See, Id. Thus, the Court concludes that ATF has failed to demonstrate that the release of the requested information could reasonably be expected to interfere with an enforcement proceeding.

### C. SEGREGABILITY

Furthermore, even were ATF able to adequately demonstrate

10

that the disclosure which City seeks could reasonably be expected to interfere with an enforcement proceeding, FOIA requires that, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." Here, the Court finds that the identity of specific individuals and weapons in the database are reasonably segregable from the other information which the City requests. ATF could easily "delete" the portion which it avers is sensitive, which here is limited to the identity of persons and weapons found in the database, while maintaining the integrity of the remainder of the requested information.

To illustrate this principle, the Court notes that the following sentence contains two separate parcels of information: John Doe purchased 12 guns which were recovered in Chicago in relation to a crime. First, there is the information that *a single individual* bought 12 guns which were subsequently recovered in Chicago. Second, there is the information that *John Doe* is the individual whose guns were recovered in Chicago. Only the second piece of information could reasonably be expected to interfere with an enforcement proceeding. However, in the instant action, the City seeks only the first parcel of information. In order to track the relationship between guns recovered in connection with crime, gun purchasers and gun manufacturers, the

City needs to know that a particular individual purchased the recovered weapon, not the identity of that individual. Similarly, the City seeks to analyze the relationship between a particular weapon, and the events and manufacturer related to that weapon, but does not need the exact identifying serial number. In both instances a unique identifier code would serve to separate the sensitive information, from the information regarding trafficking patterns.

ATF argues that requiring the agency to encrypt identifying information constitutes the creation of new records. The Court finds otherwise. The City of Chicago is not asking ATF to track or input new information into its database system. Rather, the City is asking that ATF retrieve information already stored within ATF's databases, in a redacted manner. Further, while ATF would like to retain a definition of deletion that is limited to marking out words with a black pen on a hard copy of text, such a definition is antiquated in this age of computer technology. Encryption is a modern form of computer deletion for redaction purposes. Encryption deletes sensitive information, such as exact identity, by obscuring it, while retaining useful information. In the example cited above, encryption effectively deletes parcel two of the information while retaining parcel one. Further, ATF's definition of deletion is not consistent with its own system of information distribution and management. When ATF wishes to

redact a portion of sensitive information it does not assign someone to print out hard copies of that information and cross out sensitive words with a black pen. Rather, ATF stores all its data in databases and draws the information out of its databases for disclosure to the public by means of writing computer queries. ATF wrote specific redacting queries to develop the information it currently makes available on its FOIA zip disk. For example, ATF programed its database to compile only the last five of eight digits of its FFL numbers. Although ATF's database contains all eight digits, ATF wrote a query which redacted that number and then provided that information to the public on the zip disk. Similarly, in order to segregate the identity of an individual from other information surrounding the purchase and recovery of weapons, ATF would need only to write a query to recover the desired information in an encrypted format. The record before this Court reveals that writing such a query would take an ATF employee anywhere from a few minutes to a few hours. Further, once the information was encrypted, it could again be stored on a zip disk and easily and cheaply provided to FOIA requesters. Thus, the burden on the agency is minuscule. Moreover, ATF is under an obligation pursuant to FOIA to provide the requested information in a redacted or encrypted format, where, as here, the information is stored in a database and such encryption is a reasonable and simple means of segregating

sensitive information from non-sensitive information.

In sum, the Court finds that ATF has failed to satisfy its burden to demonstrate that the requested information was properly withheld under Exemption (6), (7)(A) or (7)(C), and the information must therefore be disclosed to the City under the Freedom of Information Act. Additionally, the Court finds that even if the information requested were to fall within one of the FOIA exceptions, the identifying information is entirely segregable from other valuable information, and ATF would have a duty to provide a redacted form of the information, as described above.[4]

**ORDERED**: Plaintiff's motion for summary judgment is granted. Defendant's motion for summary judgment is denied.

**ENTERED**:

DATED: MAR 0 6 2001

George W. Lindberg
United States District Judge

---

[4] Plaintiff contends that Defendant has waived its right to claim exemptions under FOIA, by previously allowing other interest groups access to the requested information. The parties evidence a factual dispute surrounding this issue, and because the exemption issues are dispositive, the Court does not reach the question of waiver.

14